**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ALFONSO JACKSON,                      )
                                      )
           Plaintiff,               )     3:09-CV-0112-LRH-VPC
                                      )
   vs.                                )     **REPORT AND RECOMMENDATION**
                                      )     **OF U.S. MAGISTRATE JUDGE**
                                      )
ELY STATE PRISON,                     )
                                      )     May 15, 2009
           Defendant.               )
_____)

       This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), LR IB 1-4, and and the District Court's order (#5). The court construes plaintiff's letter as a complaint and a motion for temporary restraining order (#1), which the defendant opposed (#8). On March 13, 2009, this court held an emergency hearing on plaintiff's motion. For the reasons stated below, the court recommends that plaintiff's motion for temporary restraining order be denied and that this case be dismissed without prejudice and with leave for plaintiff to commence a new action after he has exhausted his administrative remedies.

         **I.**       **History and Procedural Background**

       Plaintiff Alfonso Jackson, ("plaintiff") is incarcerated by the Nevada Department of Corrections ("NDOC") at Ely State Prison ("ESP") (#1). On February 27, 2009, the Clerk of Court received a letter from plaintiff concerning a cell extraction that occurred on February 19, 2009 at ESP. Plaintiff alleged that correctional officers used excessive force during the cell extraction and that he suffered injuries as a consequence. *Id.* Plaintiff also stated, "I fear for my life and I strongly believe [prison staff] have plans to kill me unless the court issues a restraining orders against NDOC and Ely State Prison officials. . . ." *Id.* Plaintiff requested specific relief, including that prison officials provide him his legal work, that an investigation be initiated against

ESP correctional officers for use of excessive force, that he be allowed to shower, to make legal calls, and that prison staff be prohibited from harassing plaintiff. *Id.*

United States District Judge Howard D. McKibben was advised of plaintiff's letter and also learned that plaintiff had attempted to contact Judge McKibben via telephone. Judge McKibben issued an order indicating that a notice of appeal had been filed in an unrelated case (Case No. 03-428 -HDM-RAM); therefore, the District Court was divested of jurisdiction over this proceeding (#2). However, Judge McKibben directed the Clerk of Court to file the letter as a separate action. *Id.* The Clerk of Court did so, and the matter was assigned to United States District Judge Larry R. Hicks and to the undersigned magistrate judge (#5). The District Court then referred the motion for temporary restraining order, and, in turn, this court issued an order setting this matter for an emergency hearing, which was held on March 13, 2009. The court now turns to the facts alleged in plaintiff's letter and the evidence presented at the emergency hearing.

On February 19, 2009, ESP medical staff ordered plaintiff to be assigned to the prison infirmary, as he had been on a hunger strike. Medical directive #110 mandates that inmates on hunger strikes be evaluated and possibly assigned to the infirmary (#8, Ex. A). When plaintiff refused repeated requests that he come out of his cell and remove his mattress from his cell door/window, NDOC staff introduced chemical agents into the cell. *Id.,* Ex. B. Plaintiff continued to refuse to leave his cell, so an extraction team entered the cell, used hands-on force to obtain control over the plaintiff, and removed him from the cell. *Id.* The cell extraction team escorted plaintiff to the infirmary, where he continued to resist. *Id.* Upon his arrival at the infirmary, plaintiff's clothing was removed, except for his underwear, and he was secured in an infirmary cell without further incident. *Id.* Plaintiff suffered minor abrasions to his left wrist, lip and leg, as a result of the cell extraction. *Id.* at p. 6. Defendants' counsel reported on the record at the hearing that her review of additional nursing notes indicates plaintiff also suffered a superficial laceration over one eye and redness on his wrists where he was shackled.

In addition to the written reports of the cell extraction, the NDOC also provided a DVD of the cell extraction to chambers, which the court reviewed.

At the emergency hearing, plaintiff recounted the cell extraction and told the court that the ankle shackles and handcuffs were too tight, that he could not walk, had trouble breathing, and that he suffered intense pain. When asked to provide facts in support of the statements in his letter that he fears for his life and that NDOC staff have plans to kill him, plaintiff offered the following itemization of concerns:

1. Plaintiff suffers from TMJ, but was denied surgery; therefore, he needs a soft diet;
2. The soft diet he now has is not satisfactory;
3. He would like to be moved to a different unit;
4. Prisons officials used excessive force and injured him during the February 19, 2009 cell extraction;
5. He did not receive proper medical treatment for the injuries he sustained as a result of the cell extraction;
6. When he retrieved his personal property after the cell extraction, some of it was damaged (including legal papers), and certain property was missing;
7. While he was housed in the infirmary, prison employees damaged his legal work;
8. He was not allowed to shower for twenty-four hours after being taken to the infirmary, and he needed to wash off the chemical agents from the cell extraction;
9. He believes that prison employees are tampering with his food trays and tainting his food;
10. The correctional officers have no regard for human life and constantly harass him;
11 In 2006, a correctional officer threatened him;
12. At some point in time, another correctional officer called him a "rat" in the presence of other inmates; and,
13. The correctional officers engage a continued pattern of harassment, including racist comments and "smart" remarks.

The court notes that plaintiff is proceeding *pro se.* "In civil cases where the plaintiff appears *pro se,* the courts must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi . V. Los Angeles Police Dep't.,* 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

## II.     Discussion and Analysis

**A.     Discussion**

### 1.     Preliminary Injunction Analysis

The Prison Litigation Reform Act ("PLRA") states that

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires

3

> preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief... .

18 U.S.C. § 3626(2).

The traditional equitable criteria for granting a preliminary injunction in the Ninth Circuit are: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). Alternatively, the moving party may demonstrate *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions going to the merits were raised and the balance of hardships tips sharply in his or her favor. *Johnson*, 72 F.3d at 1430 (emphasis added); *see also Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291, 1298 (9th Cir. 2003). The Ninth Circuit has stated that these alternatives represent "extremes of a single continuum" rather than two separate tests and thus, the "greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Clear Channel*, 340 F.3d at 813. A prohibitory injunction preserves the status quo while litigation is pending, while a mandatory injunction provides preliminary relief well beyond maintaining that status quo. *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Mandatory preliminary injunctions are disfavored, and "the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id*. (quoting *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976). The "granting or withholding of a preliminary injunction rests in the sound judicial discretion of the trial court." *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 325 F.2d 141, 143 (9th Cir. 1964).

### 2. Temporary restraining order

The standard for issuing a temporary restraining order is identical to the standard for preliminary injunction. *Brown Jordan Intern., Inc., v. Mind's Eye*, 236 F. Supp.2d 1152, 1154 (D. Haw. 2002). Moreover, it is appropriate to treat a non-*ex parte* motion for a temporary

1 restraining order and preliminary injunction as a motion for a preliminary injunction. *See* 11A
2 Charles A. Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE CIV. 2d § 2951 (2007) ("When
3 the opposing party actually receives notice of the application for a restraining order, the procedure
4 that is followed does not differ functionally from that on an application for a preliminary
5 injunction and the proceeding is not subject to any special requirements.").

### 3. Eighth Amendment

Where an inmate is claiming a violation of his Eighth Amendment right to be free from cruel and unusual punishment based on use of excessive force, the proper inquiry is whether the force resulted in the unnecessary and wanton infliction of pain or suffering. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To determine whether the force used was wanton and unnecessary "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. When reviewing use of force, the court considers (1) the extent of the injury suffered by the inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The court must give deference to the prison officials when reviewing use of force and cannot substitute its own judgment for the judgment of prison officials. *Whitley*, 475 U.S. at 322. Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury. *Id.*

### B. Analysis

The court construes plaintiff's letter as a claim that he has been the victim of excessive force in violation of his Eighth Amendment right to be free of cruel and unusual punishment. The court further construes plaintiff's letter as a motion for temporary restraining order and preliminary injunction based upon this allegations that plaintiff is in fear of his life and that prison officials plan to kill him if the court does not intervene. The court first addresses plaintiff's claim of excessive force in the context of his request for emergency relief.

5

1    The evidence adduced at the hearing reveals that plaintiff refused to move from his cell
2 to the infirmary because he was on a hunger strike. Prison officials repeatedly asked plaintiff to
3 remove the mattress and open the door. He refused, they introduced chemical agents into his cell,
4 but plaintiff still refused to cooperate. Therefore, NDOC staff used hands-on force to restrain,
5 subdue, and extract plaintiff from his cell. The court reviewed the DVD of the cell extraction
6 from the moment NDOC staff prepared for the cell extraction until plaintiff was relocated,
7 undressed, and placed in the infirmary cell. The court observed that plaintiff was repeatedly
8 uncooperative and combative. Plaintiff was able to breathe, and when he was escorted outside
9 and into the infirmary, he was quite capable of walking and appeared uninjured. Further, it is
10 predictable that an uncooperative, combative inmate might suffer mild abrasions during a forced
11 cell extraction, but such injuries were not the result of unnecessary or wanton infliction of force.
12 Further, NDOC staff tempered the severity of the force to extract plaintiff from his cell. Once the
13 cell extraction was completed, plaintiff remained at the infirmary for a period of days, and he was
14 ultimately returned to his cell. The evidence does not support a claim that NDOC staff used
15 excessive force that resulted in unnecessary or wanton infliction of pain and suffering.

16    The court next considers whether a temporary restraining order or preliminary injunction
17 should issue based upon plaintiff's allegations that he is in fear of his life and that NDOC officials
18 have plans to kill him. Plaintiff offered no evidence in support of these claims. Instead, plaintiff
19 described a plethora of grievances he has about his conditions of confinement, which are
20 enumerated above. These grievances touch on complaints about his diet, loss of his property,
21 harassment, and his desire to be moved to another unit. Taken in sum, they do not remotely
22 support the very serious claims which gave rise to this emergency hearing. The court finds that
23 plaintiff has not demonstrated he is likely prevail as to this claim or that he has suffered
24 irreparable injury. Because plaintiff failed to demonstrate likelihood of success on the merits and
25 irreparable injury, the court does not address the balance of hardship or public interest elements.

26    The Ninth Circuit has held that as an alternative to the four traditional equitable criteria
27 for relief through preliminary injunction, plaintiff may prove either (1) probably success on the
28 merits and possibility of irreparable injury, or (2) that serious questions going to the merits were

raised and the balance of hardships tips sharply in his favor. *Southwest Voter Registration Educ. Project,* 344 F.3d at 917 (emphasis added). The court has already concluded that plaintiff has not shown he can meet the first alternative test – a likelihood on the merits and irreparable injury.

As to the second alternative test, there are no serious questions going to the merits of these claims and the balance of hardships does not tip sharply in plaintiff's favor. Thus, plaintiff has not met the second alternative test.

### III.  Conclusion

Based upon the foregoing and for good cause appearing, the court concludes that plaintiff has not presented evidence to the court that he is likely to succeed on the merits of his Eighth Amendment claim or that he is entitled to injunctive relief, since he has also failed to demonstrate that he will suffer irreparable harm in the absence of an injunction. As such, the court recommends that plaintiff's motion for a temporary restraining order and/or a preliminary injunction (#1) be **DENIED.** In addition, the court recommends that to the extent plaintiff's letter (#1) is construed as a complaint, that it be **DISMISSED** without prejudice**.** Plaintiff has not exhausted his administrative remedies regarding the allegations set forth in the letter, and he must do so before he has leave to commence a new action concerning the facts giving rising to this case.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

#### IV.    Recommendation

**IT IS THEREFORE RECOMMENDED** that the District Court enter an order as follows:

1. **DENYING** plaintiff's motion for a temporary restraining order and/or preliminary injunction (#1); and

2. **DISMISSING** this case without prejudice.

**DATED:** May 15, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**